**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSE ALVAREZ,<br><br>        Plaintiff,<br><br>v.<br><br>VIVINT SOLAR, INC., DAVID BYWATER, DAVID F. D'ALESSANDRO, BRUCE MCEVOY, JAY D. PAULEY, TODD R. PEDERSEN, ELLEN S. SMITH, JOSEPH S. TIBBETTS, JR., and PETER F. WALLACE,<br><br>        Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1. This action concerns a proposed transaction announced on July 6, 2020, pursuant to which Vivint Solar, Inc. ("Vivint" or the "Company") will be acquired by Sunrun, Inc. ("Sunrun") ("Proposed Transaction").

2. On July 6, 2020, the Board of Directors of Vivint (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger and reorganization (the "Merger Agreement") in an all-stock deal, pursuant to which Vivint shareholders will receive 0.55 shares of Sunrun common stock for each share of Vivint common stock they own (the "Merger Consideration").

3. On August 14, 2020, in order to convince Vivint's stockholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading preliminary S-4

Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5. In addition, a special meeting of Vivint's stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so Vivint stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial

compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, a Vivint shareholder.

10. Defendant Vivint is a Delaware corporation and a party to the Merger Agreement. Vivint shares are traded on the NYSE under the ticker symbol "VSLR."

11. Defendant David Bywater is Chief Executive Officer and a director of the Company.

12. Defendant David F. D'Alessandro is a director of the Company.

13. Defendant Bruce McEvoy is a director of the Company.

14. Defendant Jay D. Pauley is a director of the Company.

15. Defendant Todd R. Pedersen is a director of the Company.

16. Defendant Ellen S. Smith is a director of the Company.

17. Defendant Joseph S. Tibbetts, Jr. is a director of the Company.

18. Defendant Peter F. Wallace is a director of the Company.

## FACTS

19. Vivint is a full-service residential solar provider in the United States. Founded in 2011, Vivint provides homeowners with simple and affordable clean energy. With the help of Vivint, homeowners can power their homes with clean, renewable energy, typically achieving significant financial savings over time. Vivint designs and installs solar energy systems for homeowners and offers monitoring and maintenance services.

20. Sunrun is one of the nation's leading home solar, battery storage, and energy

services companies. Founded in 2007, Sunrun pioneered the residential solar service model, creating a low-cost solution for customers seeking to lower their energy bills. Sunrun's home battery solution, Brightbox, brings families affordable, resilient, and reliable energy.

21. On July 6, 2020, Vivint's Board caused the Company to enter into the Merger Agreement. The Merger Agreement provides that Vivint will merge with and into Viking Merger Sub, Inc., a Delaware corporation and a wholly-owned subsidiary of Sunrun, with the Company surviving as a wholly-owned subsidiary of Sunrun

22. At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> Each share of Company Common Stock issued and outstanding immediately prior to the Effective Time (each such share, a "Company Share") (other than Company Shares owned by Parent, Merger Sub, any other wholly owned subsidiary of Parent or the Company immediately prior the Effective Time, including Company Shares held in treasury by the Company, and in each case not held on behalf of third parties (collectively, the "Cancelled Company Shares")) shall be converted automatically into and shall thereafter represent the right to receive a number of shares of Parent Common Stock equal to the Exchange Ratio [0.55] (the "Per Share Merger Consideration")

23. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

24. It is therefore imperative that the Company shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

25. Section 6.1 of the Merger Agreement has a "no solicitation" clause that prevents Vivint from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

SECTION 6.1 No Solicitation by Company; Company Acquisition Proposals.

(a) Except as expressly permitted by this Section 6.1, from the date of this Agreement until the Effective Time or, if earlier, the valid termination of this Agreement in accordance with Section 8.1, the Company shall not, shall cause its subsidiaries and its and its subsidiaries' respective executive officers and directors, and will use reasonable best efforts to cause the Company Joint Ventures and the Company's and its subsidiaries' and the Company Joint Ventures' respective directors, officers, employees, investment bankers, attorneys, accountants and other advisors or representatives (collectively, "Representatives") not to, directly or indirectly, (i) initiate, solicit or knowingly encourage or facilitate any inquiries with respect to, or the making of, or that could reasonably be expected to lead to, any Company Acquisition Proposal, (ii) engage in any negotiations or discussions with any Third Party concerning any Company Acquisition Proposal, or provide access to its properties, books and records or any confidential or nonpublic information or data to any Third Party relating to the Company, any of its subsidiaries, any of the Company Joint Ventures or any Company Project, or have or participate in any discussions with any Third Party, in connection with any of the foregoing, or (iii) unless this Agreement has been validly terminated in accordance with its terms, approve, authorize or enter into any term sheet, letter of intent, commitment, memorandum of understanding, agreement in principle, acquisition agreement, merger agreement or other agreement (whether written or oral, binding or nonbinding) in connection with or relating to any Company Acquisition Proposal (other than an Acceptable Confidentiality Agreement). The Company also agrees that, immediately following the execution of this Agreement, it shall (and shall use reasonable best efforts to cause each of its subsidiaries and its and their Representatives to) immediately (1) cease any solicitations, discussions or negotiations with any Third Party in connection with a Company Acquisition Proposal or any potential Company Acquisition Proposal or that would otherwise be prohibited by the first sentence of this Section 6.1(a), and (2) terminate each Third Party's access to any physical or electronic data rooms relating to any potential Company Acquisition Proposal. The Company also agrees that following the execution of this Agreement it will promptly request each Third Party that has prior to the date hereof executed a confidentiality agreement that is currently in effect in connection with a Company Acquisition Proposal or potential Company Acquisition Proposal to return or destroy all confidential information furnished to such Third Party by or on behalf of it or any of its subsidiaries prior to the date hereof. The Company shall promptly (and in any event within one Business Day after the Company's Knowledge of any such event) notify Parent of the receipt of (1) any Company Acquisition Proposal after the execution of this Agreement, (2) any inquiry, proposal, offer or request for information with respect to, or that could reasonably be expected to result in or lead to, a Company Acquisition Proposal, or (3) any discussions or negotiations sought to be initiated or continued with the Company, any of its subsidiaries or its or their Representatives concerning a Company Acquisition Proposal, which notice shall include a summary of the material terms of, and the identity of the Third Party making, such Company Acquisition

Proposal, inquiry, offer, proposal or request for information and an unredacted copy of any Company Acquisition Proposal, inquiry, offer, proposal or request for information (including any proposed transaction agreements (including any drafts thereof and all schedules and exhibits thereto) relating to any Company Acquisition Proposal) made in writing (including electronically) and a summary of terms and conditions of any Company Acquisition Proposal, inquiry, offer, proposal or request for information not made in writing. Commencing upon the provision of any notice referred to above, the Company shall (A) keep Parent (and its outside counsel) reasonably informed on a reasonably current basis regarding the status and terms of discussions and negotiations relating to any such Company Acquisition Proposal, request or inquiry and (B) provide to Parent as promptly as practicable and in any event within twenty-four hours following receipt or delivery thereof unredacted copies of all correspondence and other writings or media (whether or not electronic) exchanged between the Company and any Third Party containing any of the terms or conditions of any Company Acquisition Proposal, including any proposed transaction agreements (and any drafts thereof and all schedules and exhibits thereto). Notwithstanding anything to the contrary herein, the Company may grant a waiver, amendment or release under any confidentiality or standstill agreement (but solely to the extent necessary to allow for a confidential and nonpublic Company Acquisition Proposal to be made to the Company or its Board of Directors) so long as the Company promptly (and in any event within twenty-four hours thereafter) notifies Parent thereof (including the identity of such counterparty) after granting any such waiver, amendment or release.

26. In addition, Section 10.3 of the Merger Agreement requires Vivint to pay up to a $54,000,000 "termination fee" in the event this agreement is terminated by Vivint and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to Vivint's ability to consider other offers.

27. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

28. As alleged herein, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

29. First, the Registration Statement omits material information regarding Vivint's and

Sunrun's financial projections.

30. With respect to Vivint's financial projections, the Registration Statement fails to disclose all line items used to calculate total costs, EBITDA, levered free cash flow, and net cash flow. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

31. With respect to Sunrun's financial projections, the Registration Statement fails to disclose all line items used to calculate total costs, EBITDA, levered free cash flow, and net cash flow. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

32. The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

33. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisors Morgan Stanley & Co. LLC ("Morgan Stanley") and BofA Securities, Inc. ("BofA") and Sunrun's financial advisors Credit Suisse Securities (USA) LLC ("Credit Suisse") in connection with the Proposed Transaction.

34. With respect to Morgan Stanley's *Trading Comparables Analysis of Vivint*, the Registration Statement fails to include: (i) the estimated number of fully diluted shares of Company common stock and (ii) the net debt of the Company. This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

35.     With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis of Vivint*, the Registration Statement fails to include: (i) the Company's estimated levered free cash flows, (ii) unrestricted excess cash from loan facility financing, (iii) the individual inputs and assumptions underlying the range of discount rates of 9.3% to 11.3%, (iv) Morgan Stanley's basis for applying a EBITDA multiple range of 12.0x to 16.0x, and (v) terminal values.  This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

36.     With respect to Morgan Stanley's *Discounted Equity Research Analysts' Future Price Targets of Vivint*, the Registration Statement fails to include Morgan Stanley's basis for applying the range of discount rates of 9.3% to 11.3%.  This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

37.     With respect to Morgan Stanley's *Trading Comparables Analysis of Sunrun*, the Registration Statement fails to include: (i) the estimated number of fully diluted shares of Sunrun common stock and (ii) the net debt of Sunrun.  This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

38.     With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis of Sunrun*, the Registration Statement fails to include: (i) Sunrun's estimated levered free cash flows, (ii) the individual inputs and assumptions underlying the range of discount rates of 9.4% to 11.4%, (iii) Morgan Stanley's basis for applying a EBITDA multiple range of 12.0x to 16.0x, and (iv) terminal values.  This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant

information in considering how to vote.

39. With respect to Morgan Stanley's *Discounted Equity Research Analysts' Future Price Targets of Sunrun*, the Registration Statement fails to include Morgan Stanley's basis for applying the range of discount rates of 9.4% to 11.4%. This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

40. With respect to Morgan Stanley's *Pro Forma Levered Discounted Cash Flow Analysis*, the Registration Statement fails to include: (i) estimated levered free cash flows, (ii) unrestricted excess cash from loan facility financing, (iii) the individual inputs and assumptions underlying the range of discount rates of 9.3% to 11.3%, (iv) Morgan Stanley's basis for applying a EBITDA multiple range of 12.0x to 16.0x, and (v) terminal values. This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

41. With respect to BofA's *Selected Publicly Traded Companies Analysis of Vivint*, the Registration Statement fails to include the individual multiples and metrics for the companies observed by BofA in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

42. With respect to BofA's *Discounted Cash Flow Analysis of Vivint*, the Registration Statement fails to include: (i) the Company's stand-alone, levered, after-tax free cash flows, (ii) the individual inputs and assumptions underlying the range of discount rates of 9.0% to 12.0%, (iii) BofA's basis for applying exit multiples of 0.5x to 0.9x, and (iv) terminal values. This information must be disclosed to make the Registration Statement not materially misleading to Vivint

stockholders and provide stockholders with full and relevant information in considering how to vote.

43. With respect to BofA's *Selected Publicly Traded Companies Analysis of Sunrun*, the Registration Statement fails to include the individual multiples and metrics for the companies observed by BofA in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

44. With respect to BofA's *Discounted Cash Flow Analysis of Sunrun*, the Registration Statement fails to include: (i) Sunrun's stand-alone, levered, after-tax free cash flows, (ii) the individual inputs and assumptions underlying the range of discount rates of 10.0% to 13.5%, (iii) BofA's basis for applying exit multiples of 1.1x to 1.5x, and (iv) terminal values. This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

45. With respect to BofA's *Has/Gets Analysis*, the Registration Statement fails to include: (i) the individual inputs and assumptions underlying the range of discount rates of 10.0% to 13.5% and (ii) BofA's basis for applying a perpetuity growth rate of 0.0% to 1.0%. This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

46. With respect to Credit Suisse's *Selected Public Companies Analysis—Sunrun*, the Registration Statement fails to include: (i) the individual companies and (ii) the multiples and metrics for the individual companies observed by Credit Suisse in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

47. With respect to Credit Suisse's *Selected Public Companies Analysis—Vivint Solar*, the Registration Statement fails to include the individual companies, multiples and metrics for the companies observed by Credit Suisse in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

48. With respect to Credit Suisse's *Levered Sum-of-the-Parts (SOTP) Discounted Cash Flow Analysis—Sunrun*, the Registration Statement fails to include: (i) S the individual inputs and assumptions underlying the range of discount rates of 10.5% to 13.0% and 9.0% to 100%, (ii) Credit Suisse's basis for applying perpetuity growth rate range of 4.0% to 5.0%, and (iii) terminal values. This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

49. With respect to Credit Suisse's *Levered Sum-of-the-Parts (SOTP) Discounted Cash Flow Analysis—Vivint Solar*, the Registration Statement fails to include: (i) the individual inputs and assumptions underlying the range of discount rates of 10.5% to 13.0% and 9.0% to 100%, (ii) Credit Suisse's basis for applying perpetuity growth rate range of 4.0% to 5.0%, and (iii) terminal values. This information must be disclosed to make the Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

50. With respect to Credit Suisse's *Implied Exchange Ratio Analyses* the Registration Statement fails to include: (i) estimated synergies, (ii) the individual inputs and assumptions underlying the range of discount rates of 9.0% to 13.0%, and (iii) Credit Suisse's basis for applying perpetuity growth rate range of 0.0% to 2.0%. This information must be disclosed to make the

Registration Statement not materially misleading to Vivint stockholders and provide stockholders with full and relevant information in considering how to vote.

51. The omission of the above-referenced material information renders the Registration Statement false and misleading.

52. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

55. Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

56. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

57. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement. Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

58. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

**COUNT II**

**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)**

59. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60. The Individual Defendants acted as controlling persons of the Company within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

61. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

63. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

66. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: August 27, 2020

        **MOORE KUEHN, PLLC**

        */s/Justin Kuehn*
        Justin A. Kuehn
        Fletcher W. Moore (pro hac vice motion forthcoming)
        30 Wall Street, 8th floor
        New York, New York 10005
        Tel: (212) 709-8245
        jkuehn@moorekuehn.com
        fmoore@moorekuehn.com

        *Attorneys for Plaintiff*